IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES LIABILITY
INSURANCE COMPANY

    Plaintiff,

    v.

DCC DESIGN GROUP, LLC

    Defendant.

## COMPLAINT

Plaintiff, United States Liability Insurance Company ("USLI"), by and through its undersigned counsel, hereby makes its complaint against DCC Design Group, LLC ("DCC") and in support hereof, avers as follows:

## INTRODUCTION

1. This action is filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as there is an actual case and controversy between the parties that requires adjudication by the Court.

2. USLI seeks a declaration that it has no duty to defend or indemnify DCC with respect to an underlying civil action filed against it, i.e. <u>AtlantiCare Health Services, Inc., et al. v. Wolfe Scott LLC, et al.</u>, Superior Court of New Jersey, DN ATL-L-000182-25 (the "Underlying Action"), seeking damages

resulting from damage to tangible property at an ambulatory surgery center for which DCC provided interior design consulting services.

## PARTIES

3.  USLI is an insurance company incorporated under the laws of the State of Nebraska with its principal place of business at 1190 Devon Park Drive, Wayne, Pennsylvania, 19087.

4.  DCC is a Delaware corporation with is principal place of business at 2 Mill Road, Suite 103, Wilmington, Delaware 19806.

## JURISDICTION AND VENUE

5.  DCC is subject to the jurisdiction of this Court because it is a Delaware corporation and regularly conducts business in this District.

6.  Diversity jurisdiction is proper under 28 U.S.C. § 1332, because complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.  USLI seeks a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. An actual controversy exists regarding the parties' rights, duties, and/or obligations under a policy of insurance issued by USLI, and this Court therefore has jurisdiction to declare the rights and legal obligations of any interested party seeking relief.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)

because DCC resides in this district.

## FACTUAL BACKGROUND

### The Notice of Claim and Underlying Complaint

9. The Underlying Action was filed on or about January 28, 2025, in the Superior Court of New Jersey, Law Division, Atlantic County, alleging breach of contract, breach of implied covenant of good faith and fair dealing, negligence, and misrepresentation in connection with construction of a new Ambulatory Surgery Center (the "ASC") on property in Egg Harbor Township, New Jersey, owned by a plaintiff in the Underlying Action, AtlantiCare Health Services, Inc. ("AtlantiCare"). A copy of the complaint in the Underlying Action is attached hereto as **Exhibit A.**

10. The complaint in the Underlying Action alleges that AtlantiCare and DCC entered into an Agreement (the "Professional Consulting Services Agreement") to perform interior design services related to the ASC. See Ex. A. at ¶ 11.

11. The Professional Consulting Services Agreement was effective May 30, 2018, and provided for a scope of work in accordance with a proposal from DCC to AtlantiCare dated May 1, 2018 and revised May 31, 2018. A copy of the Professional Consulting Services Agreement is attached as an exhibit to the complaint in the Underlying Action.

12. The complaint in the Underlying Action alleges that DCC and other defendants represented that they had experience in building surgical centers including, but not limited to, the selection and installation of appropriate flooring. See Ex. A. at ¶ 15.

13. The complaint in the Underlying Action alleges that Plans and Specifications detailed the unique nature required of the flooring for the surgical center including, but not limited to, the floor needing to be nonporous material with appropriate vapor barrier. See Ex. A. at ¶ 16.

14. The complaint in the Underlying Action alleges that AtlantiCare experienced multiple incidents of the flooring material failing to perform as represented, including bubbling of the vinyl flooring within the ASC. See Ex. A. at ¶ 17.

15. The complaint in the Underlying Action alleges that AtlantiCare investigated to determine the cause of the failures of the flooring materials and determined it was caused by improper specification of the material used for the flooring. See Ex. A. at ¶¶ 17-18.

16. The complaint in the Underlying Action alleges that AtlantiCare has suffered damages, including but not limited to, additional costs of replacement of the failing flooring. See Ex. A. at ¶¶ 25, 29.

17. AtlantiCare seeks compensatory and consequential damages from

4

each defendant, including DCC, in each of its four causes of action.

18.   By letter dated October 11, 2024 (the "Notice Letter"), counsel for AtlantiCare placed defendants in the Underlying Action, including DCC, on notice of a possible claim and invited an inspection of the ASC before the flooring was permanently replaced. The letter includes the following description of the possible claim:

> The delamination condition will now require the Owner to replace the entire
> floor system in the areas where the dynamic loads are expected to be higher, i.e. patient areas and operation rooms. This will cause a significant closure of the facility and losses due to cancelled or unscheduled surgeries during the period of closure. My client has also spent approximately $100,000 to date on patching for the areas of delamination in order to eliminate and safety hazards related to the delamination.
>
> I am writing at this time to put you on notice of this possible claims against your clients for the cost of the patching and the costs of the replacement of the flooring and would suggest that each of you advise your insurance carriers of this claim.

A copy of the Notice Letter is attached hereto as **Exhibit B**.

### USLI's Policy Issued To DCC

19.   USLI issued professional liability policy No. SP 1561227H to DCC with a policy period from October 1, 2023 to October 1, 2024 and extended reporting period from October 1, 2024 to October 1, 2027 (the "Policy"). A true and accurate copy of the Policy, with premium amounts redacted, is attached hereto as **Exhibit C**.

5

20.     The Policy contains a Specified Professions Professional Liability Errors and Omissions Coverage Form, SP (07-09) (the "Coverage Form") that includes an insuring agreement which provides:

I.      INSURING AGREEMENTS

A.      The **Company** will pay on behalf of the **Insured, Loss** in excess of the Deductible not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that an **Insured** shall become legally obligated to pay because of **Claims** first made against an **Insured** during the **Policy Period** or if applicable, during the Extended Reporting Period, for **Wrongful Acts** or **Wrongful Acts** resulting in **Personal Injury,** arising solely out of an Insured's duties on behalf of the **Named Insured** or **Subsidiary.**

21.     The Coverage Form includes the following definitions of bolded terms in the Insuring Agreement and in other defined terms:

III.    DEFINITIONS

The following defined words have a special meaning and are highlighted throughout this Policy by bold print.
…
**B.**     "**Claim**" means:

1.     A demand for money as compensation for a **Wrongful Act,** or

2.     Any judicial or administrative proceeding, including a **Disciplinary Proceeding,** mediation or arbitration initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Act,** including

    any appeal therefrom;

  **3.** Any request to toll the statute of limitations relating to a potential **Claim** involving an alleged **Wrongful Act.**

  A **Claim** shall be considered first made when any **Insured** or the **Insured's** legal representative or agent first receives notice of a **Claim.**

…

**H.** "**Loss**" means damages and settlements and pre-judgment and post-judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include that portion of any multiplied damage award which exceed the amount multiplied, criminal or civil fines or penalties imposed by law, taxes, matters deemed uninsurable under the law pursuant to which this Policy shall be construed, or the return or dispute over, in whole or in part, of any fees charged or collected by the Insured. For the purpose of determining the insurability of punitive damages and exemplary damages, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the **Named Insured** or to the **Claim** giving rise to the damages.

…

**M.** "**Professional Services**" means services rendered to others for a fee solely in the conduct of the Insured's profession as stated in ITEM VIII. of the Policy Declarations, including such services provided electronically utilizing the Internet or a network of two or more computers.

**P.** "**Wrongful Act**" means any actual or alleged error, omission or negligent act committed solely

7

    in the rendering of or failure to render
    **Professional Services** by an **Insured** or any
    person, including an independent contractor
    acting on the behalf of the **Named Insured** or
    **Subsidiary,** for whom the **Insured** is legally
    liable in the rendering of **Professional Services.**
    The same **Wrongful Act,** an interrelated series
    of **Wrongful Acts** or a series of similar or related
    **Wrongful Acts** by one or more **Insureds** shall
    be deemed to be one **Wrongful Act** and to have
    commenced at the time of the earliest **Wrongful Act.**

22. The Coverage Form includes the following exclusion from coverage:

IV. EXCLUSIONS

The **Company** shall not be liable to make payment for **Loss** or **Claims Expenses** in connection with any **Claim** made against an **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving:
…
C. Any actual or alleged bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

**<u>Coverage Communications</u>**

23. DCC provided a copy of the Notice Letter to USLI.

24. By letter dated December 30, 2024 (the "Declination Letter"), USLI responded to DCC's tender of the possible claim identified in the Notice Letter by denying coverage for the damages alleged in the Notice Letter. A copy of the Declination Letter is attached hereto as **Exhibit D**.

25. The Declination Letter includes the following summary explanation of

8

USLI's coverage position:

> Exclusion C bars coverage for any claim arising out of, resulting directly or indirectly from, or in any way involving any alleged damage to tangible property, including the loss of use of that property. We do not mean to imply that DCC Design Group, LLC was in any way responsible for the damage to AtlantiCare Health System's flooring; however, since they seek to hold DCC Design Group, LLC liable for the alleged flooring damage or destruction, Exclusion C bars coverage for their claim.

26. By letter dated April 8, 2025 (the "Rebuttal Letter"), counsel for DCC provided a copy of the complaint in the Underlying Action to USLI and disputed the conclusion that Exclusion C applies to bar coverage for the damages claimed. A copy of the Rebuttal Letter is attached hereto as **Exhibit E.**

27. Specifically, the Rebuttal Letter includes the following argument:

> The denial relies on Exclusion IV(C), which bars coverage for "damage to or destruction of any tangible property." This mischaracterizes the nature of the claim. The underlying lawsuit, which DCC categorically denies, does not allege conventional property damage arising from construction activities or direct physical injury to property. *See* Exhibit B. Rather, the claim arises from a professional design error—specifically, DCC's alleged improper specification of flooring materials that were unsuitable for use in the facility and now require replacement. DCC is a design firm, and allegations against it relate to its professional design work and services provided in that capacity. *See* Exhibit B.
>
> As you are aware, the Professional Liability Coverage applies to "Claims ... for Wrongful Acts ... arising solely out of an Insured's duties on behalf of the Named Insured." The Policy defines a "Wrongful Act" to include "any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render Professional Services by an Insured." The selection and specification of design materials unquestionably falls within the scope of "Professional Services."
>
> Exclusion IV(C) should not be read so broadly as to eliminate

9

coverage for design-related professional liability claims—the very type of claim this policy is intended to cover. Here, the Complaint expressly attributes the alleged damages to a design defect, not faulty workmanship or construction.

## **COUNT I – DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

28. USLI incorporates the averments of Paragraph 1 through 27 of this Complaint as though set forth fully.

29. USLI declined coverage for the possible claim described in the Notice Letter because the damages claimed are excluded by Exclusion C, as it alleges only damage to property, including loss of use thereof.

30. DCC tendered the Underlying Complaint to USLI along with a letter arguing that Exclusion C should not be read so as to eliminate coverage for property damage arising from design-related professional liability claims.

31. The Underlying Complaint alleges property damage in the form of bubbling in vinyl flooring and seeks compensatory and consequential damages related to replacement of the vinyl flooring.

32. A case of actual controversy exists between USLI and DCC.

33. A determination of the legal obligations between USLI and DCC will affect present behavior, have present consequences and resolve a present dispute.

34. USLI seeks a declaration that is has no duty to defend or indemnify DCC with respect to the Underlying Action because Exclusion C applies to exclude all claims arising out of any actual or alleged damage to or destruction of

any tangible property.

WHEREFORE, USLI requests that this Court enter Judgment in favor of USLI declaring that USLI has no duty to defend or indemnify DCC under the Policy with respect to the complaint in the Underlying Action together with such other and further relief as the Court deems appropriate.

**MARSHALL DENNEHEY, P.C.**

*/s/ Aaron E. Moore*
Aaron E. Moore, Esq. (#6739)
1007 N. Orange Street, Suite 600
P.O. Box 8888
Wilmington, DE 19899-8888
T: (302) 552-4367
E: AEMoore@mdwcg.com

*Attorney for United States Liability Insurance Company*

Dated: June 5, 2025